# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

August 24, 2011

The Honorable Sterling Johnson
Senior U.S. District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: U.S.A. v. Gregory Lawry, 10-CR-898 (SJ)

Your Honor:

Mr. Lawry pled guilty to being a felon in possession of firearms, a violation of 18 U.S.C. §922(g), and is scheduled to be sentenced on September 14, 2011 at 9:30 a.m.

The Probation Department found Mr. Lawry's total offense level to be 25, his criminal history category to be IV, and his guideline range of imprisonment to be 84 to 105 months.

We seek a non-guideline sentence in this case, however, to reflect Mr. Lawry's care for his children, his wife, his tragic personal history, and the sentencing disparities between the State and Federal sovereigns in prosecuting this case.

**I. The factors to consider in determining sentence.**

Pursuant to the holding of United States v. Booker, 543 U.S. 220 (2005), the Court is now required to consider all of the sentencing factors enumerated in 18 U.S.C. §3553(a). 18 U.S.C. §3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in §3553(a)(2).

**1. 18 U.S.C. §3553(a)(1).**

Pursuant to this factor, the Court is required to consider the nature and circumstances of the offense and the history and characteristics of Mr. Lawry

**A. The nature and circumstances of the offense.**

Mr. Lawry had constructive possession of two guns in a dresser drawer in the apartment of Mona Feaster, the woman who lived with two of his minor daughters.

The guns were discovered during a police search after three individuals who had committed a local robbery barricaded themselves in the apartment of Mona Feaster, the joint custodian of Mr. Lawry's children. Ms. Feaster had had problems with her door lock, and it was

well known in her apartment building as an apartment easy to break into. The robbers broke into the apartment, with Mr. Lawry's daughters still inside, but eventually gave themselves up to the police. The police searched the apartment and found the weapon the robbers possessed, and then the two guns Mr. Lawry possessed in a dresser drawer.

### B. The history and characteristics of Mr. Lawry.

Mr. Lawry's personal history is accurately reported in the Presentence report, at ¶¶51-98, with the exception of some minor corrections and clarifications that we have brought to the attention of the Probation Department.

Mr. Lawry was raised by his mother in a poor household with many children. Mr. Lawry's mother worked and left the children with a babysitter. Mr. Lawry's youngest sister choked to death when she was 6 months old after being fed solid food by a babysitter. As Mr. Lawry grew older, he became the caretaker for the other children. It was a lot of responsibility, and Mr. Lawry did not feel that he had a childhood. Mr. Lawry's mother began abusing drugs, and the situation at home became worse. Mr. Lawry began acting out and was arrested for theft offenses when he was 13 and 15 years old. Mr. Lawry went to a Division of Youth Detention facility for a year, but made a good transition back into the community.

When Mr. Lawry was 20 years old, his best friend and brother, Bryant Lawry, was killed in a robbery. His death affected Mr. Lawry very deeply. Shortly thereafter, Mr. Lawry's uncle took custody of his sister's children, and Mr. Lawry also went to live with his uncle. After the death of her son and losing custody of her remaining children, Mr. Lawry's mother stopped using drugs and began to put her life back together. She realized the difficulty Mr. Lawry was having in coping with his brother's death. Mr. Lawry and his mother began rebuilding their relationship, and Mr. Lawry says that they have a very good relationship now.

Mr. Lawry was first married when he was 27 and had three daughters. He suffered the tragedy of one of his children dying at birth. Mr. Lawry's relationship with his wife ended due to her infidelity, and Mr. Lawry took custody of his other two children. Mr. Lawry's relationship with his children is the most important thing in his life. Given the difficulties of his own childhood and his father's abandonment of him as a child, Mr. Lawry works hard to be involved in his children's lives. Although he no longer lives with them, he has joint custody of them, sees them daily, takes them back and forth to school, takes them to their doctor visits, and is their weekend and evening care giver. As his daughters write in their letters, enclosed as exhibit A, Saturday was father/daughter day, and Mr. Lawry would take them out every Saturday to the zoo, to museums, to the park, and out to eat. His daughters also say that Mr. Lawry provided discipline, and talked to them about the things they did wrong. Both of his daughters miss him very much.

Mr. Lawry has two sons, and is active in their lives as well. Mr. Lawry has provided emotional and financial support for his son, Dyrell, throughout Dyrell's life. Mr. Lawry was separated from his son, Brian, by Brian's mother for many years, but they re-established contact in 2010 and have been working hard to build a relationship.

Mr. Lawry remarried in 2010, and has a two year old daughter. Mr. Lawry is actively involved in his youngest daughter's life, as well. Although Mr. Lawry and his wife, Tanisha Fraizer, don't live together, their separation is due to his wife's need to provide care for her elderly mother. As both she and her mother detail in their letters, Mr. Lawry was there for the two of them at a very critical point in their lives. Both of them were hospitalized with serious illnesses, and Mr. Lawry and his wife had a newborn daughter to take care of. Mr. Lawry took care of them all, in addition to continuing to care for his other two daughters. Please see their letters attached as exhibit B.

Mr. Lawry does have a criminal history, but Mr. Lawry has always tried to make the best of his periods of probations and incarceration. Mr. Lawry completed five years of probation in 1996 with no violations. During his periods of incarceration he has been employed as a porter, in reception, in food service, and on the utility gang. He has attended GED classes, printing classes, alcohol and substance abuse treatment classes, and transition programs. He has had no disciplinary infractions while in custody.

We have enclosed, as exhibit C, letters from Mr. Lawry's friends, family, and community. All of them attest to the care Mr. Lawry has for his children, his devotion to his children, and his children's need for him. All of them ask the Court to be as merciful as possible at sentencing.

## 2. 18 U.S.C. §3553(a)(2).

The Court is next required to consider the following four factors in determining the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner.

### A. A sentence to reflect the seriousness of the offense.

Gun possession is a serious offense, but there is no evidence that Mr. Lawry planned to use these weapons against anyone. He has no prior convictions for crimes of violence. Given these facts, a sentence below the guidelines will be more than sufficient to punish Mr. Lawry and reflect the seriousness of the offense.

This is especially true when the Court considers the sentence Mr. Lawry was facing in New York State for the exact same crime. Mr. Lawry was originally arrested on the instant offense and prosecuted in Kings County Supreme Court. I spoke with the attorney who represented him on the offense, and she confirmed that Mr. Lawry had been offered a sentence of one and one half to three years in prison for a plea to the charge pending there (two counts of criminal possession of a weapon). Mr. Lawry accepted the offer and was prepared to plead guilty at the next court appearance, but the case was transferred to federal court.

### B. A sentence to adequately deter criminal conduct.

A sentence below the guidelines will still provide individual and general deterrence for the offense. Mr. Lawry faces a period of supervised release in addition to his jail sentence, and this period of supervision and the penalties for any violation will deter him from any further criminal conduct and also serve as a warning to others of the serious consequences of gun possession.

### C. A sentence to protect the public from any future crimes on the part of Mr. Lawry.

Mr. Lawry has no record of violent crimes so there is no need to incarcerate Mr. Lawry for a lengthy period of time to protect the public. The public will be further protected by the penalties Mr. Lawry faces for any violation of his supervised release.

### D. A sentence to provide needed educational, vocational, or medical treatment.

Mr. Lawry is not in need of educational or vocational training, or medical treatment. There is no need to impose a prison sentence to accomplish these goals.

### 3. 18 U.S.C. §3553(a)(3).

The Court must next consider the kinds of sentences available. Mr. Lawry is not subject to a mandatory minimum sentence, so all sentencing options are available to the Court.

### 4. 18 U.S.C. §3553(a)(4).

The Court must next consider the applicable guideline sentence. As noted above, Mr. Lawry's recommended guideline range of imprisonment is 84 to 105 months. This guideline recommendation includes a four point enhancement for possession of a weapon with an obliterated serial number. Mr. Lawry concedes that the serial number is obliterated and that he does not have to know that the number was obliterated for the enhancement to apply.

However, Mr. Lawry did not know the serial number was obliterated, and without that enhancement, his recommended range of imprisonment would be 57 to 71 months in custody. The Court can consider that Mr. Lawry's recommended sentencing range has been increased by more than two years for a fact that he was unaware of, in determining an appropriate sentence for Mr. Lawry.

### 5. 18 U.S.C. §3553(a)(5).

The Court must next consider whether there are any pertinent policy statements issued by the sentencing commission that would affect Mr. Lawry's sentence. We believe that Mr. Lawry would be eligible for a non-guideline sentence because of his family circumstances.

The Second Circuit has affirmed the district courts' broad discretion to depart downward for extraordinary family responsibilities, particularly where the families of the defendants are the intended beneficiaries of the departure. United States v. Galante, 111 F.3d

1029 (2d Cir. 1997). See United States v. Johnson, 964 F. 2d 124 (2d Cir. 1992); United States v. Alba 933 F.2d 1117 (2d Cir. 1991). Here, Mr. Lawry provides day to day care for his two minor daughters while their custodian works and attends school. Mr. Lawry's wife's health is poor, and she still suffers from lupus and panic attacks. When she has these attacks, Mr. Lawry cares for her and their toddler daughter. A sentence below the guidelines would permit Mr. Lawry to return to care for his family more quickly.

### 6. 18 U.S.C. §3553(a)(6).

The Court must next consider the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. Sentencing disparity exists if Mr. Lawry is sentenced at the recommended guideline sentence, when he was offered a sentence of one and one half to three years in prison by New York State for the same offense. While separate sovereigns have the right to set their own sentences, the four year difference between the state offered maximum sentence and the minimum sentence recommended under the federal guidelines for this same offense is a factor the Court can consider in determining an appropriate sentence for Mr. Lawry.

### 7. 18 U.S.C. §3553(a)(7).

The Court next needs to determine if there are any victims in the case requiring restitution. There are none.

## II. Conclusion.

We respectfully request that the Court impose a non-guideline sentence because of Mr. Lawry's family circumstances and because the recommended guideline sentence is greater than necessary to achieve the goals of sentencing. We believe a sentence at or near the sentence offered by New York State would be sufficient, but not greater than necessary to achieve the goals of sentencing.

Sincerely,

Mildred M. Whalen
Staff Attorney
(718) 330-1290

enc.

cc:   Assistant U.S. Attorney David Sarratt, Esq.
      U.S. Probation Officer Michael Dorra
      Mr. Gregory Lawry, MDC
      ECF